**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CARL JOSEPH MINTER,

     Petitioner,                 Case No. 5:07-CV-12138

v.                                 HONORABLE JOHN CORBETT O'MEARA
                                 UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Carl Joseph Minter, ("Petitioner"), presently confined at the West Shoreline Correctional Facility in Muskegon Heights, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for two counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(b)(i); and one count of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(b)(i). For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Macomb County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

The conduct underlying Minter's convictions took place at Minter's home between the fall of 2001 and the summer of 2003. Minter lived with his fiancée, his brother, and two friends. The complainant in this case, who was Minter's fiancée's younger sister, chose to spend about half her weekends staying at Minter's house. The complainant did not have her own bedroom there, so she slept on the couch.

The complainant testified that she initially thought of Minter as "a brother and a best friend." However, on one occasion in the fall of 2001, while the complainant was sitting on the couch with Minter and her sister, who was sleeping, Minter began rubbing her leg, then stuck his finger into her vagina for several minutes while she "sat there frozen and scared." The next day, Minter began rubbing her leg again, but after she told him "no" twice, he stopped. After these incidents, the complainant continued to spend weekends at Minter's house.

The complainant testified that one night in May or June of 2003, she asked Minter to bring her some vodka, which he did. After drinking it, she began to get very sick, tired, and drunk, and eventually vomited. After she vomited and lay on the floor, according to the complainant, Minter got on top of her and penetrated her vagina with his penis. The complainant testified that shortly after this incident, she and Minter got drunk again and he again penetrated her vagina with his penis. The complainant claimed that she and Minter would often drink or smoke marijuana together, and that she would frequently wake up after having done so to find Minter touching her breasts, vagina, or buttocks.

The final incident at issue occurred in July of 2003. The complainant testified that she was sleeping on the couch when Minter began rubbing her vagina, then attempted to put his penis in her mouth. When she turned her head away, he told her that if she did not open her mouth, he would put his penis between her legs, so she opened her mouth. She testified that Minter then pulled his penis out of her mouth and ejaculated on her face and hair.

The complainant explained that she told no one about these incidents because she was afraid no one would believe her, and she did not want to "blow [her] family apart." She also wanted to continue spending time with her sister and the other people who lived with Minter, whom she considered to be part of her family. Eventually, however, the complainant told her boyfriend what Minter had done to her, and the next day, she told her mother. The complainant's father then reported the incidents to the police.

At trial, Minter acknowledged allowing the complainant to drink at his house, but testified that he expected her to follow certain other rules, such as not leaving the house without telling Minter or her sister where she was going, and not bringing her boyfriends to the house. Minter admitted that he and the complainant would occasionally engage in physical contact including wrestling, back rubs, and foot rubs, but he denied touching her for sexual gratification, and also denied forcing her to have sex with him. All the residents of Minter's house testified that they thought of their household, including the complainant, as a family.

*People v. Minter,* No. 253684, * 1-2 (Mich.Ct.App. June 21, 2005).

Petitioner's conviction was affirmed on appeal. *Id.* The Michigan Supreme Court reversed in part the Michigan Court of Appeals' decision, holding that the trial court had erred in scoring petitioner's sentencing guidelines. The Supreme Court remanded to the trial court for the limited purpose of re-sentencing petitioner, but otherwise denied petitioner's application for leave to appeal. *People v. Minter,* 475 Mich. 865 (2006).

Petitioner has now filed a petition for writ of habeas corpus, in which he seeks habeas relief on the following grounds:

I. The evidence presented at trial was insufficient to convict the Petitioner in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

II. The trial court's ambiguous instructions to the jury regarding first and second- degree criminal sexual conduct violated the Due Process Clause of the Eighth and Fourteenth Amendments.

III. Petitioner's federal constitutional rights to the effective assistance of counsel were violated where, for numerous reasons set forth below, he was prejudiced by his lawyer's failure to perform at an objective standard of reasonable competence.

IV. Petitioner's federal constitutional rights to a fair and impartial trial were violated where, for numerous instances of prosecutorial misconduct,

Petitioner was denied due process.

On June 11, 2010, this Court denied respondent's motion to dismiss on exhaustion grounds and ordered a supplemental answer which addressed the merits of petitioner's claims. *Minter v. Lafler*, No. 2010 WL 2474311 (E.D. Mich. June 11, 2010). Respondent filed an answer to the petition for writ of habeas corpus on July 12, 2010.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  Claim # 1.  The sufficiency of evidence claim.**

Petitioner first contends that there was insufficient evidence presented to convict him of first and second-degree criminal sexual conduct under a theory that he and the victim were "members of the same household".

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Moreover, in reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)).  Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002)(internal citations omitted).  Finally, the Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

5

Petitioner was convicted of first and second-degree criminal sexual conduct on the theory that he and the victim were "members of the same household." See M.C.L.A. 750.520b(1)(b)(i); 750.520c(1)(b)(I). Petitioner contends that there was insufficient evidence presented to establish that he was a member of the same household as the victim.

In rejecting this claim, the Michigan Court of Appeals held:

> In this case, the trial testimony established that all the residents of Minter's house considered themselves a family unit, and considered the complainant to be a part of that family unit while she stayed with them on weekends. Further, all the witnesses agreed that the complainant regularly stayed at Minter's house, and spent at least half her weekends there over the course of a year and a half. While the duration of most of her visits was limited to two days, this Court has held that a person's membership in a household is not determined by "[t]he length of residency or the permanency of residence" in that household. The testimony indicated that the complainant's relationship to the Minter household was an example of the "close and ongoing subordinating relationship that a child experiences with a member of his or her family" that the Legislature envisioned when enacting the "same household" provision. It is undisputed that each instance of CSC occurred at Minter's residence while the complainant was staying there. Therefore, we conclude that the jury had sufficient evidence to find that the complainant and Minter were members of the same household when each of the crimes was committed.
>
> *Minter,* Slip. Op. at 4 (footnotes omitted).

The Michigan Court of Appeals has held that the term "household," within the criminal sexual conduct statute, is intended as an "all-inclusive word" for a family unit presiding under one roof for any time other than a brief or chance visit and "assumes a close and ongoing subordinate relationship that a child experiences with a member of his or her family or with a coercive authority figure." *People v. Garrison,* 128 Mich. App.

640, 646-47, 341 N. W. 2d 170 (1983). The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. *Id.* In *Garrison,* the Michigan Court of Appeals held that the victim was "a member of same household" as the defendant, to sustain the defendant's conviction for first-degree criminal sexual conduct, where the victim lived with her father and stepmother during the school year and, on the day that school recessed for summer vacation, went to live with her mother and defendant in her mother's home pursuant to court-ordered extended visitation over summer months, and, thus, assumed a close and subordinate relationship with a member of her family or with a coercive authority figure.

Likewise, in *People v. Phillips,* 251 Mich. App. 100, 103-05; 649 N.W.2d 407 (2002), the Michigan Court of Appeals ruled that sufficient evidence existed for a rational jury to find beyond a reasonable doubt that defendant and the victim were members of the same household, to support the defendant's first-degree criminal sexual conduct conviction, where the victim was a 14 year old girl that the defendant and his wife were in the process of adopting and who was living with defendant and his wife at the time.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner and the victim were "members of the same household", so as to support his convictions for first and second-degree criminal sexual conduct. Petitioner was living with his fiancee, who was the victim's older sister. The evidence established that the victim chose to spend about half her weekends at petitioner's house over a one

and a half year period. The victim testified that she considered petitioner to be like a brother to her. The victim explained that she told no one about the sexual assaults, because she was afraid no one would believe her, and she did not want to "blow [her] family apart." The victim also testified that she wanted to continue spending time with her sister and the other people who lived with petitioner, whom she considered to be part of her family. Petitioner testified at trial that although he permitted the victim to drink at his house, he expected her to follow certain other rules, such as not leaving the house without telling petitioner or her sister where she was going, and not to bring her boyfriends to the house. All the residents of petitioner's house testified that they thought of their household, including the victim, as a family. "Given the foregoing, the jury could conclude that a continuous and subordinating relationship existed and that [petitioner] was a coercive authority figure sufficient to constitute a "household" within the meaning of the statute." *Washington v. Makel*, 39 F.3d 1183 (Table); No. 1994 WL 577462, * 2 (6th Cir. October 19, 1994). Petitioner is not entitled to habeas relief on his first claim.


**B. Claim # 2.  The jury instruction claim.**

Petitioner next claims that the trial court erred in failing to define "living in the same household" for the jury. In rejecting this claim, the Michigan Court of Appeals concluded that reversal would not be warranted, "because the trial court's failure to define a commonly understood phrase for the jury does not constitute error." *Minter,*

Slip. Op. at * 5. [1]

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* Moreover, a habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway*

---

[1] The Michigan Court of Appeals also held that the instructional error claim was waived because counsel had expressed satisfaction with the instruction as given. Respondent argues that petitioner's claim is procedurally defaulted as a result. Petitioner argues in his third claim that counsel was ineffective for failing to object to this instruction. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

*v. Withrow,* 305 F. 3d 558, 565 (6th Cir. 2002).  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

The Sixth Circuit has held that *"[a] trial court 'need not define familiar English words when the jury can appreciate their meaning without special knowledge.'" U.S. v. Lentsch,* 369 F. 3d 948, 954 (6th Cir. 2004)*(quoting U.S. v. Mack*, 159 F. 3d 208, 218 (6th Cir. 1998).  Here, the term "members of the same household"* involves familiar English words that the jury could understand without special knowledge.  The Michigan Court of Appeals' conclusion, that "members of the same household" is a commonly understood term, and that the  trial court thus did not have to instruct the jury as to its meaning, was not contrary to or unreasonable under clearly established federal law, so as to warrant habeas relief. *See e.g. Escobedo v. McGrath,* 196 Fed. Appx. 522, 523-24 (9th Cir. 2006).

Moreover, petitioner has failed to show that the jurors had any confusion with this instruction.  Although the jurors informed the judge during deliberations that they did not understand the differences between first, second, and third-degree criminal sexual conduct (Tr. IV, p. 3), there is no indication that they did not understand the meaning of the term "members of the same household."  Where a jury, desiring additional instructions, makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946).  However, a trial court is also entitled to exercise its sound discretion in deciding how best to

respond to inquiries made by a jury during its deliberations. *See United States v. Brown*, 276 F. 3d 211, 216 (6th Cir. 2002). No error need be found where a supplemental charge is responsive to the jury's specific request for clarification. *Alvarez v. Scully*, 833 F. Supp. 1000, 1007 (S.D.N.Y. 1993). Even where error is found, reversal is not automatically warranted because the error must be assessed in the context of both the original and supplemental instructions as a whole. *Id.* In the present case, the jury's inquiry had to do with the differences between the elements of the crimes of first, second, and third-degree criminal sexual conduct. The jurors did not indicate that they did not understand the concept of "members of the same household." Accordingly, there was no need for the trial court to give the jurors a more detailed definition of this term. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The ineffective assistance of counsel claims.

Petitioner next contends that he was deprived of the effective assistance of counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

11

Petitioner first contends that his first counsel, as well as stand-in counsel, were ineffective for failing to object to the trial court's failure to include a definition of "living in the same household" in the jury instructions and for failing to request a more specific definition of this term. However, because the instructions as given were adequate, counsel's failure to object was not objectively unreasonable, and petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 Fed. Appx. 463, 466-67 (6th Cir. 2008).

Moreover, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, the defense theory of the case was that the victim's accusations were entirely false and that petitioner never sexually assaulted her. The Michigan Court of Appeals concluded that petitioner had failed to show that his counsel's failure to request a definition of "living in the same household" may have been part of a "strategic decision to concentrate the jury's attention solely on Minter's denial that he engaged in any inappropriate conduct with the complainant." *Minter,* Slip. Op. at * 6. Had the jury rejected that the victim and petitioner were members of the same household, they had the option of finding petitioner guilty of third and fourth degree criminal sexual conduct as lesser included offenses of the original charges. Counsel was therefore not ineffective for choosing to focus on seeking an acquittal of petitioner on these charges. *See e.g. Tinsley v. Million,* 399 F. 3d 796, 808 (6th Cir. 2005)(a failure to request charges on all possible lesser included offenses may be proper trial strategy).

Petitioner next contends that counsel was ineffective for failing to object to the prosecutorial misconduct that he complains about in his fourth claim, *infra*. Because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's argument was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

Petitioner finally contends that he is entitled to habeas relief because of the cumulative effect of counsel's errors. Because the individual claims of ineffectiveness alleged by petitioner are meritless, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000).

### D. Claim # 4. The prosecutorial misconduct claims.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or

13

extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.;See also Payne v. Smith,* 207 F. Supp. 2d 627, 648 (E.D. Mich. 2002).

Petitioner first claims that the prosecutor vouched for the credibility for Detective Schultz, when he argued that there was no reason for Detective Schultz to fabricate a statement made by petitioner in which he admitted to furnishing liquor to the victim.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting that the Sixth

14

Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie). The prosecutor's argument was based on reasonable inferences from the evidence, accordingly, petitioner is not entitled to habeas relief on this claim.

Petitioner next contends that the prosecutor engaged in "inflammatory namecalling" by referring to petitioner as a predator. The prosecutor's use of the term "predator" to describe petitioner did not deprive him of a fair trial. *See Byrd,* 209 F. 3d at 536.

Petitioner next contends that the prosecutor asked the jury multiple times to "do justice". Petitioner essentially contends that these comments amounted to an improper civic duty argument and appealed to the sympathy of the jurors.

15

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd,* 209 F. 3d at 539 (*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir.1991)).  In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 Fed. Appx. 689, 701 (6th Cir. 2006).  Petitioner's civic duty argument claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (Tr. III, p. 163). *Cameron v. Pitcher*, 2001 WL 85893, * 10 (E.D. Mich. January 4, 2001).

Petitioner next contends that the prosecutor improperly expressed his opinions as to the falsity of witness testimony.  The prosecutor's comments, when viewed in context (Tr. III, pp. 136-37), indicate that the prosecutor based his comments on inferences from the evidence presented in court and not upon any personal knowledge.  Because the prosecutor's comments about the defense witnesses as being untruthful was based on the evidence presented in court, was only a small portion of the prosecutor's argument, and did not create the impression that the prosecutor knew of evidence not presented to the jury, the prosecutor's comments did not deprive petitioner of a fair trial. *See Cristini v. McKee*, 526 F. 888, 902 (6th Cir. 2008).

Petitioner next contends that the prosecutor engaged in misconduct by likening petitioner's conduct to a "date rape."  Petitioner claims that by doing this, the prosecutor

injected matters not of record into the case.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd*, 209 F. 3d at 535 (internal citations omitted). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

A review of the comments shows that the prosecutor was not arguing that a "date rape" had taken place, but was merely explaining why the victim delayed in reporting these crimes to the police and in doing so, noted that victims of date rapes often are reluctant to report their assaults to the police. Because the prosecutor did not argue that a date rape had taken place, the prosecutor did not mispresent the facts in this case.

Petitioner lastly contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief, because it is essentially a cumulative errors claim. *See e.g. Noel v. Norris,* 194 F. Supp. 2d 893, 931-

32 (E.D. Ark. 2002).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

<u>s/John Corbett O'Meara</u>
United States District Judge

Date:  September 7, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 7, 2010, using the ECF system and/or ordinary mail.

<u>s/William Barkholz</u>
Case Manager
